GORDON, Respondent, v. WHITE, Mayor, et al.. Appellants.

(145 N. W. 439.)

**1.    Intoxicating Liquors—Election—Petition—Qualification of Signers—"Freeholders."**

   Laws 1913, Ch. 254, providing for freeholder's petition for an election on question of sale of intoxicating liquors, defines 'freeholder" to mean one who owns the legal title to, or undivided share or interest in at least one entire lot or parcel of ground within the township, city or town where vote is to be taken.    Held, that one owning certain brick buildings and having but a leasehold interest in the realty on which they were situated was not a freholder, though at termination of lease the landowner was obliged to pay him the appraised value of the buildings.

**2.    Deed—Title to Land—Ownership—Delivery of Deed—Evidence.**
   Where a contract for sale of land provided for a delivery of the deed on payment of balance of the price, and, before such payment, the owner executed a deed which was placed in the hands of the grantee, who retained it for one day, when he delivered it to one to whom part of the purchase money was afterwards paid as agent of grantor, who held it for more than

two years thereafter until balance of price was paid, when the deed was finally delivered; it also appearing that grantee was at time of his first receiving the deed, cashier of a bank to which the deed was sent when it was finally delivered; **held,** that grantee's prior possession of the deed was not conclusive evidence that it was then delivered.

(Opinion filed February 18, 1914.)

Appeal from Circuit Court, Yankton County.   Hon. ROBERT B. TRIPP, Judge.

Election contest by Robert J. Gordon against Edwin T. White, as mayor of Yankton, and others.   From a judgment in favor of contestant, and from an order denying defendant's motion for a new trial, they appeal.   Affirmed.

*A. L. Wyman,* and *French & Orvis,* for Appellants.

It does not appear why the deed was turned over to Mr. Wilson, and under the evidence we contend that the first delivery of the deed to Mr. Heaton was such that the legal title to the property then passed to him.   This must be presumed from the evidence given, in the absence of evidence showing the contrary. He kept it in his possession for about one day, and by some agreement, the substance of which is not proven, the deed was placed in the possession of George Wilson, who was formerly an officer of the same bank of which Mr. Heaton is cashier, and who soon thereafter moved to Oregon.   It was not proven that the original delivery of the deed to Mr. Heaton, after this oral agreement was made, was not intended to pass to him the legal title to the property.

It was not proven that the deed was to be held as an escrow by Mr. Wilson until the full purchase price should be paid..   A grant cannot be delivered to the grantee conditionally, and delivery to him or his agent as such is necessarily absolute, and the instrument takes effect thereupon, discharged of any condition on which the delivery was made; and re-delivering a grant of real property to grantor, or cancelling it, does not operate to re-transfer the title. Secs. 924, 925, Civ. Code.

There are two classes of freeholders defined in Sec. 254, Laws 1913.   Any signer to the petition coming within either of these classes is a qualified signer.   A freeholder under the first class, as applied to this proceeding, is one who owns *the legal title* to at

least one entire lot, or parcel, of ground within the city of Yankton. A freeholder under the second class, as applied to this proceeding, is one who owns *an undivided share or interest* in at least one entire lot or parcel of ground within the city of Yankton.

The buildings being permanently attached to the lots are a part of them. Gross, therefore, owned an undivided share of the real estate and an undivided interest in the entire lots.

Anyone who owns the equitable title to an undivided half of a lot owns an undivided interest therein and is a qualified signer under the law. State ex rel Dillman, v. Weide, 29 S. D. 109.

*Lauritz Miller,* and *C. J. B. Harris,* for Respondent.

This deed is dated September 30, 1911, and was recorded May 12, 1913. It was not delivered to Mr. Heaton so as to pass the title until some time in the month of May, 1913, and this being the case, the deed in question could not qualify Mr. Heaton as a freeholder signer.

Heaton's testimony is that the deed was delivered to him in May, 1913, (page 93, record.)

It cannot be said that the testimony shows an oral agreement between Heaton and Mrs. McVay to ignore the terms of the written contract, and for Mrs. McVay to deliver the deed to Mr. Heaton upon the payment of $1,000 of the $5,000 purchase price, without any evidence of indebtedness, or security of the balance of the purchase price being given by Mr. Heaton. The evidence shows that Heaton never had any conversation with Mrs. McVay herself. That any conversation he may have had was with Mr. Wilson or Mr. McVay.

There is no competent evidence to show that either of these men were authorized to act for Mrs. McVay in the matter.

All that can with reason be said concerning this alleged oral agreement, is that Mr. Heaton requested that Mrs. McVay execute the deed in question before the purchase price had been fully paid, and that Mr. Wilson hold the deed as an escrow until Mr. Heaton should make the payments in full, and this was all that was done.

Respondent submits that there is no competent proof here that there was an oral agreement, and that if there was one, there is no proof that it sought to modify the written contract, or that the oral agreement has ever been executed.

In order to have passed the legal title to Mr. Heaton at that time, it would have been necessary for the delivery of the deed to have been made by Mrs. McVay, or by some one at her request, for the purpose and with the intent that the title should pass. This the evidence wholly fails to show. On the contrary, the evidence all points to a non-delivery of the deed at that time.

The ownership of the buildings could not be claimed as the ownership of the entire lots. Neither can it be construed as an undivided interest in said lots.

Before the enactment of Chapter 254, Laws of 1913, this matter finally reached the Supreme Court, where it was held by a divided court, that one who holds a contract for the purchase of real property, held an equitable estate in the land, which estate was inheritable, and such vendee was therefore a qualified freeholder to sign such a petition. State ex rel Dillman v. Weide, et al., 135 N. W. 696. (S. D.)

The amendment of 1913 was passed for the purpose of definitely settling this vexed question, and of avoiding the effect of the decision in the case cited above, and to require that a person must hold the legal title to real property to qualify as a freeholder

The leases did not qualify Mr. Gross as a legal freeholder. They are only for a term of years, and at best were only chattels real. Sec. 245 Civil Code.

Neither can his ownership of the building in question be construed so as to make him a freeholder within the meaning of the law. Secs. 186, 188, Civil Code.

Where the ownership of the land is in one person and of the buildings on said land in another, such buildings are considered as personal property. 33 Cyc. 666-67; Handforth v. Jackson, 22 N. W. 634; 150 Mass 149; Howard v. Fessenden, 14 Allen 124 (Mass.); Korbe v. Barbour, 13 Mass. 250; Curtis v. Hoyt, 19 Conn. 154; Milison v. Mutual Cash Guaranty Fire Ins. Co. 123 N. W. 839 (S. D.)

In order to be a freeholder under Chapter 254, Laws 1913, a person must own the legal title to at least "one entire lot or parcel of ground," or he must own an undivided interest in at least "one entire lot or parcel of ground" in said city.

GATES, J. This is an election contest. The cause was advanced for hearing under the provisions of section 1997, Pol. Code. On March 7, 1913, a petition signed by 31 persons was filed with the city auditor of the city of Yankton, requesting that the question of granting permits to sell intoxicating liquors at retail in said city be submitted at the forthcoming annual city election. Chapter 254 of the Laws of 1913 requires such petition to be signed by 25 legal freeholder voters. In so far as said act applies to municipalities, and in so far as the issues in the present case are concerned, said act defines the word "freeholder" as follows: "Provided: That 'freeholder' as used in this act shall be defined to be one who owns the legal title to, or owns an undivided share or interest in at least one entire lot or parcel of ground within the township, town or city, where such vote is to be taken, which lot or parcel of ground shall be of the size commonly recognized as a full lot in the town or city in which such vote is to be taken as shown by the official plat of said town or city or its additions." It was found by the trial court that nine of such signers were not qualified under the provisions of said act to sign said petition. It was therefore held that the election held in pursuance of said petition was invalid because the requisite number of 25 signers was lacking. It is conceded by appellants that five of such signers were disqualified. The legality of such petition, therefore, depends upon whether any three of the following named persons were qualified signers, viz.: D. D. Gross, W. E. Heaton, Emil Goetz, and E. J. Dowling. The qualifications of Mr. Heaton as a signer are raised by an assignment of error which alleges the insufficiency of the evidence to sustain the findings. The qualifications of the other three depend upon the interpretation of said act of the Legislature.

[1] It is conceded that Mr. Gross owned certain brick buildings in the city of Yankton, and that he had a leasehold interest in the premises upon which they were situate, and that he had no interest in any other real estate in said city. This clearly did not make him a freeholder within the meaning of chapter 254, Laws 1913, nor did the fact that at the termination of the lease the owner of the ground was obligated to pay to Gross the appraised value of the buildings.

[2] As to the qualifications of Mr. Heaton the court found the facts to be as follows:

"XIV. That W. E. Heaton, one of the persons who signed said petition, at the time he signed the same, and for more than one year immediately prior thereto, owned the legal title to the north half of lot 5 in block 20 in that part of the city of Yankton known and platted as 'Lower Yankton;' that each of the lots in said block 20 is 44 feet north and south by 150 feet east and west according to the recorded plat of 'Lower Yankton' in the office of the register of deeds of said Yankton county; that a great majority of the lots in Lower Yankton, according to said recorded plat, are 44x150 feet in size. Some of the lots in said 'Lower Yankton' are 50x150 feet in size, and some of the lots are less than 44x150 feet in size, and they vary in size.

"XV. That said W. E. Heaton at the time he signed said petition also had an interest in lots 6, 7, 8, and 9 and the south half of lot 5 in block 20 in that part of the city of Yankton known and platted as Lower Yankton, which interest was based on the following facts: That some time in the summer of 1910, prior to the month of September in said year, said W. E. Heaton made a written contract with Rebecca J. McVay, who then owned said lots, whereby he agreed to purchase the same from her and she agreed to sell and convey the same to him for the consideration of $5,000, $1,000 of which was paid at said time and a written contract was entered into, which provided that the balance of the purchase price for said lots should be paid in four equal annual installments, and that said Rebecca J. McVay should furnish a deed for said lots to said W. E. Heaton upon the full payment of the purchase price, and said contract further provided that said Heaton should have the right to pay the balance of the purchase price and obtain a deed for said lots at any time; that after the making of said contract an oral contract was made by said W. E. Heaton with one George Wilson, the son-in-law of Rebecca J. McVay, and Chet McVay, a son of said Rebecca J. McVay, or with both of them, the terms of said oral contract not being proven; that after the making of said oral contract, said Rebecca J. McVay, in the month of September, 1910, made and acknowledged a warranty deed to said W. E. Heaton for said lots, the acknowledgement being taken before one Gertrude L. Tripp, who at

that time was an employe in the bank of which said W. E. Heaton was, and ever since has been, cashier; that said deed, after its execution and acknowledgemnt was placd in the hands of said Heaton, who retained the same for about one day, when the same was by him placed in the hands of one George Wilson, who shortly thereafter moved to Oregon, taking said deed with him; that in the month of May, 1913, said deed was returned by said Wilson to the bank of which said Heaton was then and is now cashier, as the result of some correspondence between said Heaton and said Wilson, and said Heaton, after the receipt of said deed by said bank, paid to said bank, to be remitted to said Wilson, something over $2,000, whereupon said deed was given to said Heaton, and he then had the same recorded in the office of the register of deeds of Yankton county, S. D., and said deed was not, prior to that time, delivered to said Heaton so as to pass the legal title to said lots to him; that said Heaton since the fall of 1910 has been in the exclusive possession of all said lots, and has used the same and paid all taxes thereon, and the said Heaton did not own or have any interest in any other real estate in said city of Yankton at the time he signed said petition; that by the terms of the original written contract between the said Rebecca J. McVay and W. E. Heaton with reference to said lots, the deed thereof was not to be delivered to him until the consideration, $5,000, was fully paid, and that said consideration was not so paid, and that said deed was not in fact delivered to him until after the signing of the petition involved herein."

There is no dispute as to the evidence. It is appellant's contention that the deed, having been in Heaton's possession for one day in September, 1910, was in fact delivered to him at that time. It is respondent's contention that there was no delivery of the deed until May, 1913. A review of the evidence does not leave it entirely clear in our minds why Heaton had the deed in his possession in September, 1910, but we can find nothing in the record which would indicate that it was intended that such possession of the deed should be deemed to constitute a delivery of it. We think the fair inference from the testimony is that Heaton in his capacity as an officer of a bank had the deed in his possession at that time, and that it was not intended as a delivery. We can find nothing in the record that takes the case out of the well-estab-

lished rule that the findings of the trial court will not be set aside unless they are against the clear preponderance of the evidence. Unzelmann v. Shelton, 19 S. D. 389, 103 N. W. 646. Inasmuch as Mr. Heaton did not own the legal title to an entire lot, nor an undivided share or interest in an entire lot, we must hold that he was not a qualified signer of said petition. With Mr. Gross and Mr. Heaton disqualified, together with the five persons who were conceded to be disqualified, there remain only 24 signers of the petition. It is therefore immaterial whether Messrs. Dowling and Goetz were or were not qualified signers.

The judgment and order denying a new trial are affirmed.